**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUSTIN SANCHEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE TOPPS COMPANY, INC.,

Defendant.

**CASE NO.: 1:26-cv-00791**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, Justin Sanchez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant The Topps Company, Inc. ("Topps") alleging as follows:

## NATURE OF THE ACTION

1. Topps manufactures, advertises, and sells Topps-branded sports and entertainment trading cards, sports memorabilia, and digital collectibles for personal collection and/or for commercial resale. Specifically, Topps produced the "2025-26 Topps NBA Chrome Basketball Trading Card Mega Box" ("Mega Box") and sold the Mega Box online and in brick-and-mortar retail stores across the country, including a Target store in Broward County, Florida.

2. Topps' business model invites consumers to purchase its products, and in this case the Mega Box, in hopes of finding cards with resale value. Topps markets the Mega Box with express statements on the product's packaging encouraging consumers to "Chase Exclusive Blue X-Fractors," or buy the Mega Box with the expectation that it may contain a rare "Blue X-Fractor" card.

3. A Blue X-Fractor is a unique type of trading card that is particularly sought after

given its rarity and increased resale value.

4. Based on Topps' representation on the outside of the box, consumers, like Plaintiff, purchased the Mega Box with the reasonable belief that they have a chance to obtain a Blue X-Fractor card with resale value.

5. However, on or around January 13, 2026, Topps revealed there is *zero* chance a consumer will obtain a Blue X-Fractor in the Mega Box. Topps disclosed this in an email to its customers and subscribers. Initially, Topps told consumers some Mega Boxes did not contain any Blue X-Fractor cards due to a printing error. Thereafter, Topps confessed that *no* Mega Boxes include Blue X-Fractor cards, despite Topps' prior representation to the contrary.

6. Plaintiff and each member of the proposed Class (defined below) suffered an injury-in-fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, lost the benefit of their bargains with Topps, and seek all relief allowed by law, including damages, equitable relief, attorneys' fees, and costs.

## PARTIES

7. Plaintiff is and at all relevant times was a natural resident and citizen of Hollywood, Florida.

8. Topps is a Delaware corporation maintaining its principal place of business at 95 Morton Street, Fourth Floor, New York, New York, 10014.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action where the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Topps.

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy in this case exceeds $75,000 and this action is between citizens of different states. Plaintiff is a resident of Florida whereas Defendant is a Delaware entity with their principal places of business in New York.

11. This Court has personal jurisdiction over Defendants because their principal place of business is in New York.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, because Topps transacts business in this District, and because Topps resides in this District.

## GENERAL ALLEGATIONS

***Topps' Business***

13. Topps is one of the largest sports and entertainment trading card producers in the world.

14. Topps sells its products by representing that consumers have the chance to find rare trading cards that re-sell for significant amounts on the secondary market.

***The Mega Box***

15. In or around December 2025, Topps began selling the Mega Box.

16. As still shown on numerous online retail websites (*e.g.*, Target, GameStop, and Walmart),[1] Topps labeled and advertised the Mega Box with express statements encouraging consumers to "Chase Exclusive Blue X-Fractors" (the "Misrepresentation"), shown and identified

---

[1] *See* https://www.target.com/p/2025-26-topps-nba-chrome-basketball-trading-card-mega-box/-/A-95081000 (last visited Jan. 24, 2026); https://www.gamestop.com/toys-games/trading-cards/products/2025-26-topps-chrome-basketball-mega-box/437104.html?utm_source=google&utm_medium=feeds&utm_campaign=%24PLA_%24NB_MNFR_Toys_%26_Collectibles_Topps (last visited Jan. 24, 2026).

for emphasis in the image below:




17. However, Topps' January 13, 2026, email to its customers and subscribers revealed the Mega Box never contained any Blue X-Fractor cards. A copy of the email is shown below:



to me

topps All Products Topps NOW®

Dear Topps Collector,

We are reaching out to provide you with additional information regarding the 2025-26 Topps Chrome® Basketball – Mega Box.

The box states "Chase Exclusive Blue X-Factors." Unfortunately, this is a print error on the packaging. While Blue X-Fractors are not included in this product, base X-Fractors are available. This information is accurately reflected on the odds page on Topps.com.

We sincerely apologize for any confusion this may cause and appreciate your understanding. Thank you for your continued support.

Sincerely,
Topps Collector Support

18. In its email, Topps directed Plaintiff and Class members to visit the Topps.com odds

page, which revealed the Mega Box contains no chance of finding a Blue X-Fractor card:

| | |
|---|---|
| Base Sapphire | 3:1 |
| Base Sapphire Purple | 1:22 |
| Base Sapphire Gold | 1:6 |
| Base Sapphire Orange | 1:12 |
| Base Sapphire Black | 1:28 |
| Base Sapphire Red | 1:56 |
| Base Refractors Padpardascha | 1:278 |
| Topps Chrome Autographs Rookies Sapphire Gold | 1:68 |
| Topps Chrome Autographs Rookies Sapphire Orange | 1:135 |
| Topps Chrome Autographs Rookies Sapphire Black | 1:337 |
| Topps Chrome Autographs Rookies Sapphire Red | 1:674 |
| Topps Chrome Autographs Rookies Sapphire Padpardascha | 1:3367 |
| Topps Certified Autograph Issue Rookies Sapphire Gold | 1:90 |
| Topps Certified Autograph Issue Rookies Sapphire Orange | 1:180 |
| Topps Certified Autograph Issue Rookies Sapphire Black | 1:449 |
| Topps Certified Autograph Issue Rookies Sapphire Red | 1:898 |
| Topps Certified Autograph Issue Rookies Sapphire Padpardascha | 1:4489 |
| Next Stop Signatures Sapphire Gold | 1:90 |
| Next Stop Signatures Sapphire Orange | 1:180 |
| Next Stop Signatures Sapphire Black | 1:449 |
| Next Stop Signatures Sapphire Red | 1:898 |
| Next Stop Signatures Sapphire Padpardascha | 1:4489 |
| Topps Chrome Autographs Sapphire Gold | 1:108 |
| Topps Chrome Autographs Sapphire Orange | 1:216 |
| Topps Chrome Autographs Sapphire Black | 1:539 |
| Topps Chrome Autographs Sapphire Red | 1:1078 |
| Topps Chrome Autographs Sapphire Padpardascha | 1:5387 |
| SKY-Write Signatures Sapphire Gold | 1:77 |
| SKY-Write Signatures Sapphire Orange | 1:154 |
| SKY-Write Signatures Sapphire Black | 1:385 |
| SKY-Write Signatures Sapphire Red | 1:770 |
| SKY-Write Signatures Sapphire Padpardascha | 1:3848 |
| Signature Style Sapphire Gold | 1:213 |
| Signature Style Sapphire Orange | 1:135 |
| Signature Style Sapphire Black | 1:337 |
| Signature Style Sapphire Red | 1:674 |
| Signature Style Sapphire Padpardascha | 1:3367 |
| Sapphire Selections ***X4 up*** | 1:11 |
| Sapphire Selections Gold ***X4 up*** | 1:84 |
| Sapphire Selections Orange ***X4 up*** | 1:167 |
| Sapphire Selections Red ***X4 up*** | 1:833 |
| Sapphire Selections Superfractors ***X4 up*** | 1:4040 |
| Infinity | 1:160 |

19. Since its January 13, 2026 email admitting to the Misrepresentation, Topps has

taken the Mega Box off its website and replaced it with a model that states, "Chase New Exclusive Red, White and Blue Parallels!" The updated product is sold for $49.99 plus tax, which is substantially lower than the Mega Box with "Chase Exclusive Blue X-Fractors" language (sold for around $84.99). A sample of the new product is below:




20. Topps' misleading and deceptive practices directly harmed Plaintiff and the Class. Among other injuries, Topps' Misrepresentation deprived Plaintiff and the Class of the benefit of their bargains, in that they purchased the Mega Box based on Topps' express representation they could pull an "Exclusive Blue X-Fractor" card, when in reality that was never a possibility. Indeed, Topps' lower price for the updated boxes without the Misrepresentation is an acknowledgement that the false chance to "Chase Exclusive Blue X-Fractors" increased the Mega Boxes' market value, and a tacit admission consumers would not have paid as much for Mega Boxes had they been truthfully advertised.

## PLAINTIFF'S EXPERIENCE

21. On or around January 1, 2026, Plaintiff purchased the Mega Box in store from his local Target. Plaintiff paid $84.99 plus tax to Target for the Mega Box.

22. Plaintiff purchased the Mega Box with the reasonable belief that he had a chance to chase exclusive Blue X-Fractor cards, as expressly stated on multiple sides of the Mega Box packaging.

23. Plaintiff would not have purchased the Mega Box, or alternatively would not have paid as much, but for Topps' Misrepresentation that he had a chance to "Chase Exclusive Blue X-Fractor" cards.

24. Plaintiff reasonably understood that in exchange for paying for the Mega Box, he had the chance to chase a Blue X-Fractor card.

25. However, as Topps admitted in its email, Plaintiff had no such chance.

26. Indeed, the Mega Box Plaintiff purchased contained no Blue X-Fractor cards.

27. Since the Mega Box purchased by Plaintiff had no chance of containing any Blue X-Fractor cards, the Mega Box was worth less than it would have been had there actually been a chance it contained any Blue X-Fractor cards.

28. As indicated above, since sending the email, Topps stopped selling Mega Boxes with packaging containing the Misrepresentation, updating packaging to omit any reference to "Exclusive Blue X-Fractor" cards. Importantly, Topps charges only $49.99 for the newly-packaged product—a *40% decrease*—confirming the falsely advertised Mega Boxes Plaintiff and Class members purchased are worth less than what they paid.

29. As a result, Plaintiff has suffered numerous actual injuries including, inter alia (a) price premium damages paid for falsely advertised Mega Boxes; (b) lost benefit-of-the-bargain;

and (c) lost opportunity costs associated with attempting to chase a Blue X-Fractor card. As a result, Plaintiff is entitled to damages and attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the below-defined Nationwide Class (herein referred to as the "Class"):

> All purchasers in the United States who purchased a Mega Box from Topps or its authorized retailers within the applicable statute of limitations, and excluding subsequent purchases on a secondary market.

31. Excluded from the Class are Topps and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

32. Plaintiffs reserve the right to amend or modify the Class definition or add a subclass as this case progresses.

33. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34. **Numerosity – Rule 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands. The Class is ascertainable by records in Topps' possession.

35. **Commonality and Predominance – Rule 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Mega Box is deceptive;

b. Whether Topps breached an express warranty to Plaintiff and Class members;

c. Whether Topps negligently misrepresented the Mega Box to Plaintiff and Class members; and

d. Whether Topps was unjustly enriched at the expense of the Plaintiff and Class members.

36. Topps engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

37. **Typicality – Rule 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through Topps' uniform misconduct described above. Further, there are no defenses available to Topps that are unique to Plaintiff.

38. **Adequacy of Representation – Rule 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in complex class action litigation, and he will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

39. **Superiority – Rule 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the

burden and expense that would be required to individually litigate their claims against Topps, so it would be impracticable for Class members to individually seek redress for Topps' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

40. **Ascertainability**. All members of the proposed Class are readily ascertainable. The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class.

## COUNT I
**Breach Of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

41. Plaintiff incorporates paragraphs 1-39 above as if fully set forth herein.

42. Plaintiff and Class members formed a contract with Topps at the time Plaintiff and Class members purchased the Mega Box.

43. The terms of these contracts included the promises and affirmations of fact made by Topps on the Mega Box's packaging and throughout its marketing and advertising representing the chance to "Chase Exclusive Blue X-Fractors." This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and Class members and Topps.

44. Topps purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Mega Box could contain a Blue X-Fractor card.

45. Plaintiff and the Class performed all conditions precedent to Topps' liability under

these contracts when they purchased the Mega Box.

46. Topps breached an express warranty concerning the Mega Box and its qualities because Topps' statement about the Mega Box was false and the Mega Box does not conform to Topps' affirmation and promise described above.

47. Plaintiff and Class members would not have purchased the Mega Box had they known the true nature of the Mega Box, i.e., there was no chance it would contain any Blue X-Fractor cards.

48. As a result of Topps' breach of express warranty, Plaintiff and Class members have been damaged in the amount of the price premium paid to purchase each Mega Box and consequential damages resulting from the purchases.

49. On January 29, 2026, Plaintiff's counsel sent Topps a pre-suit notice letter, via certified mail return receipt requested, that complied in all respects with U.C.C. §§ 2-313, 2-607 and Fla. Stat. § 672.607(3)(a), Plaintiff's counsel sent Topps a letter advising that it breached an express warranty and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

**<u>COUNT II</u>**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class)**

50. Plaintiff incorporates paragraphs 1-39 above as if fully set forth herein.

51. As discussed above, Topps represented that one could "Chase Exclusive Blue X-Fractors" but failed to disclose that the Mega Box does not contain such Blue X-Fractors.

52. Topps had a duty to disclose this information. At the time Topps made this Misrepresentation, Topps knew or should have known that this representation was false or made without knowledge of its truth or veracity.

53. At an absolute minimum, Topps negligently misrepresented and/or negligently omitted material facts about the chance to find Blue X-Fractor cards in a Mega Box.

54. In fact, Topps admitted its negligence when Topps informed the general public on or about January 13, 2026 that each Mega Box contained an identical printing error.

55. The negligent misrepresentations and omissions made by Topps, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Mega Box.

56. Plaintiff and Class members would not have purchased the Mega Box if the true facts had been known.

57. The negligent actions of Topps caused damage to Plaintiff and Class members, who are entitled to actual and nominal damages.

**<u>COUNT III</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

58. Plaintiff incorporates paragraphs 1-39 above as if fully set forth herein.

59. Plaintiff brings this claim in the alternative to Count I for breach of express warranty.

60. Plaintiff and the Class members conferred benefits on Topps by purchasing the Mega Box.

61. Topps has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Mega Box. Retention of those monies under these circumstances is unjust and inequitable because Topps' labeling of the Mega Box was misleading to consumers, which caused injuries to Plaintiff and Class members because they would have not purchased the Mega Box if the true facts would have been known.

62. Plaintiff has no adequate remedy at law.

63. Because Topps' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Topps must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award all actual, nominal damages, and consequential damages to which Plaintiffs and Class members are entitled;

C. Award Plaintiff and Class members their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees, as allowed by law;

D. Grant restitution to Plaintiff and the Class and require Topps to disgorge their ill-gotten gains; and

E. Grant any and all such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all claims so triable.

Dated: January 29, 2026

Respectfully submitted,

*/s/ Mark K. Svensson*

Mark K. Svensson (NY Bar No. 5974290)
**MILBERG, PLLC**
405 East 50th Street
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com

*Attorneys for Plaintiff and the Proposed Class*